Case number 3-09-0763, West Bend Mutual Insurance, by Scott Files v. Wanda Norton, by John P. Ridge. Mr. Ridge, you may proceed. Good morning, Your Honors. Good morning, Mr. Files. May it please the Court, I'm here to represent Wanda Norton. This case is up on appeal. The issue, it was a partial dismissal out of the circuit court here. It's still pending, one part of it is still pending, the declaratory judgment in the circuit court. It is here because the judge sought to dismiss Ms. Norton's count for this vexatious delay in settling the case. And basically our arguments are, number one, previously the insurance company, West Bend Mutual, had agreed to arbitrate, to dismiss the case in the circuit court and arbitrate. So basically we're going to argue judicial estoppel. And then subsequent to that they brought it back again and then they waived the right to continue to argue it and again agreed to arbitration. And then finally, I guess the third argument is, arbitration did occur and arbitration was in my client's favor. And West Bend had like a 90-day period to dispute the award, the arbitration award. Well, years went by and they're still arguing that the vexatious delay case should be dismissed because they have a bona fide dispute regarding coverage. Well, there is no bona fide dispute regarding coverage. And basically, Your Honors, if I may, I know you all have read it, but I'm just wondering for the audience if I should go into some of the facts here so they may understand it a little. I think it would be helpful if you would, please. Thank you, Judge. Back in 1998, Wanda Norton, my client, was involved in an automobile accident. She was hit by a gal by the name of Karen Patterson. Eighteen months went by and Wanda could not get any relief from the insurance company for Karen Patterson or for her company. So basically, she filed a lawsuit. She filed it after 18 months because in 24 months she would have lost all her rights to do so. It turns out that Karen Patterson appears the first time and then she fails to appear, so my client took a default judgment. She was awarded for Karen Patterson not following through, if you would. The judge awarded her about $13,100 in damages. At that point in time, she still hadn't received any money, and she discovered that Karen Patterson's insurance company, American Family, was not going to pay. In fact, they had said because Karen Patterson never notified them for two years about the accident, they considered that she breached the contract with them, so they weren't going to pay. So now my client is uninsured. Basically, yeah, she's an uninsured driver. She sues her company, West Bend, under uninsured motorists. West Bend comes in and they say, wait, if you read the policy, you can't go to court and sue us, you have to arbitrate. And the issue is, well, that's true. If there's no issue as to coverage, we agree we should go and arbitrate. So it was dismissed. This is the second suit now that's dismissed to go and arbitrate. Several months after the dismissal of that suit, West Bend says, no, we want to come back to the circuit court. We are going to file a third suit asking for a declaratory judgment that Wanda Norton breached her contract with us. And basically, they changed their legal positions. Well, that went on for quite a while until there was a summary judgment. They asked for a summary judgment that Wanda Norton breached the terms of her policy and should not have uninsured motorist coverage. The circuit court ruled in 2003 that no, she hadn't breached her policy. And at that point, right after that ruling, Norton filed a motion to compel arbitration. And then days after that, in open court, the parties proceeded or agreed to arbitrate. Again, this is the second time now. An arbitration was held two years later. The arbitrators awarded Wanda Norton about $1,000 more than she originally had in her original claim. But West Bend would not pay the arbitration amount. Basically, at this point, West Bend sued Norton's attorney, sued me. They sued me under a negligence theory that I guess I was negligent in winning the case for Wanda Norton, as far as I've ever been able to figure out what their theory was. But that case went on for quite a while. And as part of that case, they wanted the circuit court here to dismiss me as Wanda Norton's attorney because basically I had a conflict of interest now. I couldn't possibly represent Wanda Norton and represent myself on the same set of facts. Well, the court kind of stayed Wanda Norton's case with West Bend until my case was completed. And they did. They eventually ended up dismissing West Bend's case against the attorney. And at that point in time, West Bend filed another motion for summary judgment against Wanda Norton, saying that there's a dispute that exists. And basically, the judge in the circuit court said, well, because there's a dispute that exists, we are going to dismiss Ms. Norton's vexatious delay claim. And so basically, that's how we are appealing that dismissal. And for numerous reasons. What we're saying is you can't argue back in 2000, when the court dismissed the case, 2000 LM 812. You can't now say there's a dispute for coverage. Just recently, back in 2000, you said there is no dispute for coverage. We want to arbitrate. So the judicial estoppel would say you can't change your positions like that. And that's exactly what they did. But then they also, if you recall, they also waived. Back when the judge said November 18, 2003, five years into this, they said we'll agree to proceed to arbitrate. So there is stopped way back in 2000, or they waived it in 2003, either way. But basically, there is no dispute on coverage. They can't come back and argue that again. That's exactly what they're doing. But... Mr. Ridge, I'd like to interrupt you for a minute, please. Certainly, Judge. I think there are a couple of things about your statement of facts that I was confused about. Sure. It's my understanding that West Bend paid in its entirety Ms. Norton's claims when she presented them. Is that correct? No. At the beginning? No. Okay. No, I think what happened was, in fact, American Family, the one who Karen Patterson's insurance company, paid some money to West Bend. Our facts tell us that it was West Bend who paid it and reserved the right to recover that money from American Family under a subrogation claim. Yeah, West Bend... Well, there might be some of the damages or some of the medical may have been paid, but certainly not all the automobile damage and nothing for her pain and suffering was ever paid by West Bend or all the medical. They made partial payments, if you would, and those partial payments, most of those were reimbursed to them by American Family. So West Bend, out of a $14,000 claim, West Bend may be out of pocket a couple of thousand dollars. When did the claim become $14,000? That was the arbitration award back in February 3, 2005. Now, what I'm saying is there's $7,000 of that $14,000 that had been paid already. All right? West Bend paid some of it, American Family paid some of it, but there's an additional, at that point in time, there was an additional $7,113 that has never been paid to my client by West Bend. How much? $7,113.61. West Bend owes and has never paid via the arbitration award back on February 3, 2005. And did they tender you that amount? Never. Never. And as a matter of fact, one of their arguments that they made to the trial court judge is, Attorney Ridge refuses to accept this amount. We tried to pay him, but he refuses. That's not true. They have never tendered a check. They won't. What they want us to do, after the arbitration award, and you're, this is a 98 accident. In 2003, we finally get an award, and they're saying, and we waited a couple of months, they still hadn't paid us, that's when we filed vexatious delay. And then they said, well, if you drop your vexatious delay, we might pay you the arbitration award. But, you know, it's very interesting, Judge. I'm glad you mentioned that. Because the trial court judge goes into it that an open court, an open court supposedly, West Bend has agreed to do this. But if you read the August 3, 2009 response from West Bend, it says, if this court were to grant Norton's motion to enforce the arbitration award, it would make the pending declaratory judgment action moot. In effect, it would be ruling against West Bend on the declaratory judgment action without hearing any evidence, and allowing West Bend to stay in court. West Bend, this is, that's dated August 3, 2009. West Bend is still trying to deny my client that award by their declaratory judgment action. That's not before us, is it? Oh, no. Well, it's part and parcel of this, Judge, because what I am saying is once you had an arbitration award, they had 90 days to attack it. They didn't. It is, that award is locked in stone, as my understanding. And they have no argument. They can't go back now and argue coverage, but that's exactly what they're doing. And so basically when they're saying there's a bona fide dispute as to coverage, there is no bona fide dispute. And if that's the basis for this judge, the circuit court judge, disallowing the vexatious delay, it's wrong. And I would ask you to reverse that. Counsel, I have a question on your brief, on page 4 of your brief, paragraph 14. You indicate that West Bend attached an affidavit of one of its attorneys making a claim or statement that they offered to settle the matter, which was the amount set by the arbitrators, but that counsel for Norton indicated would not accept that payment in that amount and instead sought additional damages from West Bend for the vexatious claim. Is that correct or incorrect? Judge, they never would pay us. When the arbitration award came out, our position is they should have tendered a check for the difference. They have no argument left. It's $7,113.61. Well, there's an affidavit by one of their attorneys that they did that. No, sir, they never tendered a check. Never, never, absolutely never. In fact, that's what they're arguing. That's what I just got done saying. They're still arguing. They want to go back and have a declaratory judgment in it. They've never done that, absolutely. He's offered. They're saying, I think if you read it, he's offering he was going to do that. That was one of their original attorneys who's no longer on this case. Didn't happen. And basically, they don't have the right to say. So you're saying that is a correct statement, they did offer that amount? They offered it, Judge, under the condition that we not move forward on vexatious delay in paying. And that's after six or seven years. I think we had to pay somebody six or seven years later what they should have paid way back when. That's not the same money. And we were saying, no, all these attorney's fees we've racked up and the promises you have made, you should pay us some vexatious delay fees. They don't have a right to say drop your claim and we'll pay you now. Okay. I just have a follow-up question to that, Mr. Ridge. The affidavit where they claim that they offered this, what you're saying is that they never offered this until after you had already filed your claim for vexation. Exactly. I just wanted to make that clear. Thank you. Thank you, Judge. Thank you, counsel. Mr. Piles, you may respond. Thank you. Good morning. May it please the court. Counsel, my name is Scott Piles. I represent West Bend Mutual Insurance Company in this case. Based on some of the recitation of some of the facts that were made by counsel for Ms. Norton, I think I have to correct a few things. This is an automobile collision that took place in 1998 involving Ms. Norton. We were Ms. Norton's automobile insurance carrier. The person that was at fault in the accident, a woman by the name of Karen Patterson, was insured by American Family Insurance. Ms. Patterson was insured at the time of the accident. Ms. Norton was insured through West Bend at the time of the accident. When Ms. Norton was injured and her property damage or her car was damaged, West Bend did the following things. We paid for the property damage for Ms. Norton's vehicle. At some point after American Family reimbursed West Bend for that payment, Ms. Norton incurred $2,800 roughly in medical bills and treatment in this accident. West Bend paid those medical bills under her medical payments coverage. During the 18 months following this collision, counsel for Norton negotiated with American Family Insurance to settle her claim. There is in the record at page 197, there is an offer made by American Family Insurance of $7,800 to resolve Ms. Norton's claim. At some point negotiations apparently broke down between Norton's counsel and American Family and Norton filed suit against the driver Patterson. Patterson was served but apparently never notified American Family Insurance that she had been sued. Mr. Ridge also did not notify American Family Insurance by saying, hey, I've sued, you're insured, she's been served, please have counsel brought in the case so that we can defend the claim or prosecute the claim and come to a resolution of some sort. Counsel for Norton did not do that. Instead, what he did is he took a default judgment. And as the court knows, a default judgment, counsel for Norton shows up, asks for an amount and the court gives it. There's no trial or decision made. It's essentially just proofs on a default. Counsel for Norton did not notify American Family Insurance, who was the insurer. Norton's attorney knew that Ms. Patterson was insured by American Family, did not notify American Family of this default for 90 days. And as the court knows, if the default is not vacated within 30 days, it's generally a final order subject to a 214.01 petition for due diligence and so forth. So in effect, after the 30 days had expired, American Family could not come in and vacate the default. Mr. Ridge, after the 90 days, counsel for Norton, notifies American Family, oh, by the way, I got a default judgment against Ms. Patterson, I want you to pay it. Are you saying that you feel he had an obligation, a legal obligation to notify American Family? I don't think he had a legal obligation, Justice O'Brien. I just think it's custom and practice in these cases that you want to keep the defendant's insurer in the loop of lawsuits and claims being made because you want the at-fault driver's insurance company to hire counsel to come in and prosecute the claim and ultimately get it resolved, either through an arbitration, a mandatory arbitration, or a jury verdict at trial. I mean, that's the custom and practice. Did I say he had a legal obligation to do it? Maybe not. Maybe not a technical obligation. However, if I may, under Ms. Norton's West Bend insurance policy, there is a provision that she has to cooperate with us, her insurer, to allow us to get monies that we paid to her that she could ultimately receive from American Family. And, of course, I'm speaking about the medical pay benefits that were paid to Ms. Norton early on in her case. West Bend was subrogated to her right to collect from American Family those medical bills. And that's where a lot of this comes in. So you're saying that entire action impaired your right of subrogation? Yes, it did, Justice Holdridge. It certainly did. Because when American Family declined coverage because of the lack of notice of the lawsuit, that ended American Family's obligation to indemnify Ms. Patterson. That also nullified our opportunity to get our medical payments money that we had paid to Ms. Norton when we paid her medical bills, like we did for the property damage. Because American Family gave us reimbursement on the property damage that we had paid to Ms. Norton. We were expecting the same from American Family on the medical bills that we had paid under our medical payments coverage. Again, it's custom and practice in these sorts of cases that we are subrogated to that interest. And when Norton took a default judgment against Patterson and didn't notify anybody, therefore allowing American Family to say, oh, I'm sorry, we don't have any coverage. West Bend then became subject to an uninsured motorist claim for a defendant that had insurance. So you're saying constructively the actions led to creating a prior insured motorist into an uninsured motorist? That's correct. That's exactly what happened here. By Counsel for Norton not notifying American Family in the existence of this lawsuit or the existence of the default judgment and not notifying them even at any point until after 90 days, that allowed American Family, because we asked Mr. Ridge or we asked Norton by letters, West Bend did, to say we want you to vacate the default against the American Family insured. If you do that, we believe American Family will come in and defend Ms. Patterson and you can go pursue your claim. Now that fact pattern in the argument that you're making right now is not the fact pattern that's only by way of background for our benefit, but it is not the issue that's up before us right now, is it? It is, and it's in this sense. It goes to the basis of us having a bona fide coverage dispute that would eliminate the vexatious claims count based on Section 155 under the Insurance Code. We are disputing the fact that we're claiming that Norton should have vacated the default against the American Family and allowed American Family to come into the case. That would have done two things. Number one, it would have alleviated us having to pay an underinsured motorist claim because the defendant would be insured by American Family. Two, we would be able to receive from American Family the medical pay benefits that we had already paid to Norton early on in the case. So there were two things that we wanted Norton to do. We wanted her to vacate the default so we could pursue our damage claim, our reimbursement under the med pay, and we also wanted not have to pay under the uninsured motorist claim when there really wasn't an uninsured motorist. The lady that was at fault in the accident was insured by American Family. And that is the basis of our claim that there was a bona fide coverage dispute that still exists. So you're saying that back in December of 2000 when you filed your motion to dismiss that you felt that there was a coverage dispute then or you knew it at that time? We did. But I want to ask a follow-up question. Isn't the requirement to go to mandatory arbitration dependent upon there being no dispute as to coverage? That's right. The dismissal that we're talking about there is that Mr. Ridge filed a direct action against West Bend saying, you know, West Bend, you've got to pay this default judgment. You are my client's insurance carrier. You are providing her with uninsured motorist coverage. You need to pay this default. That is not the law. That is not how it works. Under the West Bend policy that's in the record, there is a requirement, and Ms. Norton agrees to this when she buys the policy. She agrees that any dispute about any damages have to be arbitrated, not through a filed lawsuit. That's why that case was dismissed early on because Mr. Ridge filed a direct action against West Bend when it should have been arbitrated. And that's why the case was dismissed then. We said, you know, wait a minute. Under our policy, if there is any dispute about damages, it's got to be done through arbitration, not through the circuit court. We're not denying that Ms. Norton did not have coverage in general for this accident because obviously she did because we paid a lot of benefits under her policy. We're only questioning, we're disputing coverage under the uninsured motorist protection. And the basis for that claim is that the at-fault driver had American Family Insurance. And frankly, if they had notified American Family of one, the existence of the lawsuit, or two, the fact that they'd taken a default, American Family would have hired counsel, come in, vacated the default, and they would have proceeded to litigate the case and come to an ultimate resolution. But by Norton not notifying anybody, taking the default, and then essentially giving an excuse to American Family to decline coverage so they're insured, that manufactured an uninsured motorist claim for Norton against her carrier. Not only did it do that and make us become obligated under uninsured motorists to provide benefits, we also lost our segregation rights to collect the medical bills from American Family Insurance. That formed the basis of our declaratory actions still pending in Kankakee County. So Mr. Piles, it's your position with regard to this appeal that those issues don't have to be resolved. They have not been resolved. The only thing is, do bona fide disputes exist? Correct. And that was the basis on which the trial court granted you summary judgment. That's correct. And let me go a little bit further, a little bit to explain kind of where we are at in terms of I dispute Counsel for Norton's state of the case. There was a summary judgment that was made on the vexatious claim portion, counterclaim filed by Norton. We filed a declaratory action disputing coverage. Time went on. We agreed for reasons in the record. There's reference to how much West Bend had been paying in attorney's fees at this point and was essentially a small claim. We agreed to arbitrate to try and resolve it. Even though we thought there was dispute in coverage, we agreed to try to resolve it. All right, let's go ahead. Let's sit some arbitrators. Let's do the case. And that's what happened. Well, as I understand it, though, you have a declaratory action out there. Correct. Okay. And you, by agreement, proceeded to go to arbitration. Right, under the underinsured motorist. But the vexatious claim was filed only after the arbitration award. Am I correct? Actually, I think that there was a vexatious claim filed even before that, and it was dismissed. If I'm not correct, the record indicates that he had filed a claim for that. It was dismissed because, I think, on a 2-6-15 motion dismissed, he was given without prejudice. Without prejudice. Correct. So the vexatious claim that's under review today is the claim that was filed after the arbitration award. That's correct. Mr. Ridge filed that 3 months after the arbitration award. And so we're here today to see if, or to decide whether the trial court erred in dismissing that claim. And granting summary judgment to West Bend in the case. It wasn't a motion to dismiss, it was a summary judgment. And what standard do we use to determine whether it was reversible error or it was a correct decision by the trial court? Judge, or Justice Holdridge, that is an interesting question. However, normally when we're reviewing a summary judgment motion, the standard is de novo or it's afresh. However, in my brief, though, given this is a declaratory action, and declaring that if there was a bench, you know, if there would be a bench trial, or the court itself, without the benefit of a jury, would decide the factual questions in the case, the court essentially is going to make factual findings. In this particular case, both parties filed the motion for summary judgment. And when both parties do that, both sides are acknowledging, well, there's not really a question of fact here. This is what happened, and we want you to decide as a matter of law whether or not there was a vexatious claim or not. And what happens when the court made factual findings, and in its decision, it does. It said that he felt that West Bend, throughout the pendency of this litigation, had a bona fide coverage dispute. There's case law that says that that should be also looked at, those factual findings should be looked at under the abuse of discretion standard, which is a little bit different. I understand that normally it's a de novo standard, but there's a case cited by Judge Wensel in the trial court, and also by us, that indicate that if factual findings with regard to attorney's fees and vexatious claim, that the factual findings should only be reversed on abuse of discretion. So in other words, we cannot substitute our judgment for the judgment of the trial court. That's correct. That we should be deferential, unless we would find no rational trier effect would conclude as that trier effect concluded. That's correct. Let me make one quick point. West Bend, after the arbitration, was willing to pay the arbitration award. There are letters and there are references in the record that we indicated to Mr. Ridge, okay, we're going to dismiss our declaratory action. We won't dispute the coverage, we'll pay the arb award, we want you to dismiss your vexatious claims account. If that happened, the case would have been resolved. We wrote that letter back in September of 2005. So you made a conditional offer to pay the arbitration award. We did because, frankly, we thought there was still a coverage dispute because of the fact that we lost our subrogation rights to American family and we were playing an uninsured motorist claim on behalf of an uninsured driver that actually had insurance at the time of the accident. We still do dispute those claims, but we were willing, and it's in the record, that we were willing to drop that claim if they dropped the vexatious delay, which there's no basis for under the case law because we had a bona fide coverage dispute, for the reasons I've already said, and we would have paid the arbitration award. In fact, Judge Wenselman indicates that in his decision, and several times we offered to pay the arbitration award if the case would go away. There's no sense in us, if there's a coverage dispute, for us to pay the arbitration award and then litigate whether or not we should, if there was coverage, and then also litigate Mr. Ridge's claim about the attorney's fees for the vexatious claim. For those reasons, that's why we made the offer we did. So we were willing to pay and settle it, and there's letters in the record that indicate that. Any questions from the bench? Thank you, Mr. Piles. Mr. Ridge, you may reply. Thank you, Judge. The question has a lot of arguments, but one of the arguments, as I pointed out to this court, is there's absolutely no coverage argument. Ninety days after that arbitration award was made, and they haven't argued that it was procured by fraud or duress or some argument like that, that arbitration award, it's locked in stone. They can't go back now and argue coverage. If they wanted to argue that, they should have argued it maybe to the arbitration panel or to the court or done something. But 90 days after that arbitration judgment was made, it's locked in stone. They can't start arguing we had a good coverage dispute. They can't do it. It's contrary to the law. But not only that, judges. The way they argue. For example, if you look at the record, back on November 20, 2006, I received a phone call from Karen Patterson. She was in the Department of Correction for four and a half years. Karen Patterson, she called me because we had filed with the state of Illinois because she was an uninsured motorist. So she called me and she said, well, gee, how can I pay this claim? And I said, well, Karen, it's in the file. I said, what you should do is call up West Bend and their attorneys, and I gave her that information. That's who you want to pay this claim to now. Because we're suing them. They stood in your shoes, if you would. So West Bend, they're not deprived. I mean, basically, if anything, they're giving you this argument that we couldn't sue American family. What else are we to do? Eighteen months have gone by and we're getting no action on this case. Somebody should have been doing something. They want us to wait for 24 months. Our claim is gone. So we acted. West Bend doesn't like that or doesn't appreciate it, but certainly Karen Patterson is out there for them. What more could they do against Karen Patterson than we had already done for them? That's their money. We offered it to them. So they don't have a good argument that they're denied subrogation rights or anything like that. There's nothing. We did it all for them. And basically, Your Honors, there's two issues here. Judicial estoppel, because they changed their position way back when, when they said, let's go. When we filed in 2000, L.A. 8-12, back in October 20th of 2000, Norton sued West Bend, and then on March 7, 2001, they had that case removed, saying we will arbitrate and that Justice O'Brien is right. They agreed they have to. There's no argument on coverage. We're going to arbitrate on the dollar amount of the award. They agreed to that. Then they changed their position and come back in and ask the court for declaratory judgment. And then in the middle of declaratory judgment, they say, okay, we'll agree with you, Judge. We'll go arbitrate again. So they can't have it both ways, but if that's not enough, after 90 days, it's locked in stone. They can't do anything. This is a false argument. They don't have an argument. And to dismiss, to tell this court that there's a bona fide dispute as to coverage is our basis for dismissing versace's delay, it doesn't exist, Your Honors. Thank you. Thank you, counsel, both, for your fine arguments in this matter this morning. The case will be taken under advisement.